# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DOUGLAS W. BERRY, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action No. 1:07-0067 |
| v. ) | Judge Nixon / Knowles |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| **Commissioner of Social Security** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Record. Docket Entry No. 17. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket Entry No. 19.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his applications for SSI and DIB on September 5, 2002, alleging that he

1

had been disabled since August 13, 2002, due to back pain, emphysema, and COPD.  Docket

Entry No. 13, Attachment ("TR"), TR 61-63, 248-250.  Plaintiff's applications were denied both

initially (TR 32-33, 251-252) and upon reconsideration (TR 34-35, 257-258).  Plaintiff

subsequently requested (TR 44-45) and received (TR 30) a hearing.  Plaintiff's hearing was

conducted on February 23, 2005, by Administrative Law Judge ("ALJ") Linda Gail Roberts.  TR

489-530.  Plaintiff, Angie Berry, Marie Tharp, and Vocational Expert Jane Brenton appeared and

testified.  *Id.*

On July 24, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was

not disabled within the meaning of the Social Security Act and Regulations.  TR 263-273.

Plaintiff timely filed a request for review of the hearing decision.  TR 278-279. On November

14, 2005, the Appeals Council issued remanded the case to the ALJ to obtain and evaluate

further evidence of Plaintiff's pulmonary impairment.  TR 274-277.

On July 20, 2006, ALJ Roberts held Plaintiff's second hearing.  TR 531-559.  Plaintiff

and Vocational Expert Michelle McBroom appeared and testified.  *Id.*  On January 12, 2007, the

ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the

meaning of the Social Security Act and Regulations.  TR 10-23.  Specifically, the ALJ made the

following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.
>
> 2. The claimant has not engaged in substantial gainful activity since August 13, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD); lumbar

2

spinal disc and joint disease; and recurrent depression with anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform a wide range of light work (lift/carry 20 pounds occasionally or frequently, stand or sit for 8 out of 8 hours, walk for 2 out of 8 hours [1 hour at a time], reach, handle, finger and feel for 8 out of 8 hours, push/pull with foot controls for 3 out of 8 hours, and frequently bend and squat, with mildly limited ability to tolerate marked temperature and humidity changes and moderately limited ability to tolerate exposure to dust, fumes and gases, and with moderately limited ability to complete a normal workday without psychiatrically based interruptions and limited, but adequate, capacity to sustain concentration, persistence or pace).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 2, 1956, and is 50 years old, which is defined as an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The VE testimony established that transferability of job skills was precluded by the mental functional limitations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

3

Case 1:07-cv-00067 Document 22 Filed 04/09/09 Page 3 of 14 PageID #: 61

> 11. The claimant has not been under a "disability," as defined in the Social Security Act, from August 13, 2002 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 15-23.

Plaintiff timely filed a request for review of the hearing decision. TR 9. On July 12, 2007, the Appeals Council issued a letter declining to review the case (TR 6-8), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999)

4

(*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience.  *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful

5

activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

---

[1]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in, 1) finding that Plaintiff could perform light work, 2) rejecting the opinions of the examining mental health professionals regarding Plaintiff's mental restrictions, and 3) finding that Plaintiff could perform the mental demands of work as a cashier and clerk. Docket Entry No. 18. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative,

7

remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

Plaintiff first contends that the ALJ erred in finding that he could perform light work. Docket Entry No. 18. Specifically, Plaintiff argues that the ALJ found that he could stand for two out of eight hours per day, but only one hour at a time, which, Plaintiff states, is one-third of the walking/standing required for light work as defined by SSR 83-10. *Id.* Plaintiff argues that having one-third of the required walking/standing capacity cannot be construed as representing an ability to perform a *wide* range of light work, as the ALJ found. *Id.* Plaintiff additionally concedes, however, that the VE testified that the restrictions contained in P.A. Parker's evaluation (which the ALJ adopted) would allow for a *limited* range of light work. *Id.* Thus, Plaintiff's argument is merely that, while he could perform a limited range of light work, the ALJ erroneously stated that he could perform a wide range of light work.

8

Defendant responds that Plaintiff's argument is "really just a question of semantics" because, in determining Plaintiff's RFC, the ALJ adopted the opinion of P.A. Parker, which mirrored the RFC given by the ALJ to the VE in a hypothetical question during the hearing. Docket Entry No. 19. Defendant argues that since the actual limitations of Plaintiff's RFC were given to the VE and supported by the evidence of Record, the ALJ's use of the characterization "wide" range, when referencing the range of light work that Plaintiff could perform, was "nothing more than a misused adjective." *Id.*

The relevant issue here, however, is not whether Plaintiff could perform a "limited" or a "wide" range of light work; it is whether there exists a significant number of jobs in the national economy that Plaintiff could perform. 20 C.F.R. §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). As will be discussed in greater detail below, the ALJ properly posed numerous hypotheticals to the VE that encompassed Plaintiff's exertional and nonexertional limitations. TR 547-555. When answering the ALJ's hypotheticals, the VE testified, *inter alia*, that there were 10,000 cashier positions with a sit/stand option in Tennessee and 500,000 such positions in the United States; 1,000 counter clerk positions with a sit/stand option in Tennessee and 30,000 such positions in the United States; and 1,200 information clerk positions in Tennessee and 76,000 such positions in the United States, all of which were within the limited light range of work that Plaintiff could perform. TR 552-553. As is discussed below, the evidence in the Record clearly supports the ALJ's reliance on the VE's testimony that there were a significant number of jobs in the national economy that Plaintiff could perform, and his erroneous characterization is of no import.

Plaintiff next argues that the ALJ erred in rejecting the opinions of the examining mental

9

health professionals regarding his mental restrictions. Docket Entry No. 18. Specifically, Plaintiff contends that the ALJ erroneously disregarded the opinions of his treating psychiatrist and a consultative examiner, as well as the CRG assessments regularly completed at the Centerstone Mental Health Center, in favor of the assessment of a non-examining DDS reviewer, when the opinions of the treating psychiatrist and consultative examiner were consistent with each other and with the CRG assessments. *Id.*

Defendant responds that the ALJ properly rejected the opinion of Dr. Slay (Plaintiff's "treating" psychiatrist, who apparently saw Plaintiff on only three occasions) because it was not supported by his own records and was contradicted by the weight of the evidence of Record, including the treatment records from Centerstone Mental Health Center (*see* TR 20). Docket Entry No. 19. Defendant further maintains that the ALJ discounted the March 18, 2005, Medical Source Statement of Ability to Do Work-Related Activities (Mental) because she found it unsupported by the weight of the objective medical evidence (TR 20). *Id.* With regard to the weight accorded the consultative examiner's opinion, Defendant states, "contrary to Plaintiff's contentions, the ALJ relied upon Mr. Proffitt's narrative indicating Plaintiff had moderate limitations in the ability to understand and remember detailed instructions and the ability to make judgments on simple work related decisions, in formulating Plaintiff's RFC (TR 19, 179)." *Id.* Defendant contends that the ALJ adopted the opinion of the DDS non-examining reviewer because it was consistent with both the consultative examiner and the Centerstone Mental Health Center's treatment records as a whole (TR 20). *Id.*

Although Plaintiff contends that the ALJ erroneously disregarded the opinions of his treating psychiatrist and a consultative examiner, as well as the CRG assessments regularly

10

completed at the Centerstone Mental Health Center, in favor of the assessment of a non-examining DDS reviewer, the ALJ simply did not do so. *See* TR 16, 19-20. In actuality, the ALJ accepted the reports of DDS consultative examiner James Proffitt and Centerstone Mental Heath Center that Plaintiff suffered from depression and anxiety. TR 16. She even found that Plaintiff's recurrent depression with anxiety was severe, and that the Record demonstrated that Plaintiff had more than mild functional limitations from that impairment. *Id.* In discounting Dr. Slay's diagnosis that Plaintiff suffered from ADHD, the ALJ noted that Plaintiff had only seen Dr. Slay on three occasions: once, for an initial consultation on July 26, 2004, and again, for two follow-up sessions more than six months later, on February 11, 2005 and March 18, 2005. *Id.* The ALJ further noted that, on Plaintiff's first visit, Dr. Slay noted "*possible* attention deficit hyperactivity disorder"; then, on Plaintiff's second visit, noted "*consider* ADHD"; and only unequivocally diagnosed Plaintiff with "attention deficit disorder" once, on the final visit of the three visits.[2] *Id.* (Emphasis added.) The ALJ found that, because Dr. Slay had been the only mental health professional to diagnose Plaintiff with ADHD, and even he had diagnosed Plaintiff with ADHD on only one occasion, that diagnosis was to be accorded little weight, as it was unsupported by the weight of the evidence. *Id.*

With regard to the ALJ's findings relating to Plaintiff's GAF score, the ALJ noted that DDS consultative examiner James Proffitt rated Plaintiff's sustained GAF in the mild to transient symptom range, but he also indicated that Plaintiff had moderate limitations in coping with detailed instructions and simple work-related judgments, and in interacting with the public. TR

---

[2] While the ALJ states that Dr. Slay's diagnosis was "ADHD," it was actually "attention deficit disorder."

19. She also noted that DDS consultative psychologist Victor O'Bryan's assessment aligned with the moderate limitations specified in Mr. Proffitt's assessment narrative, and not with his numerical GAF assessment. *Id.* The ALJ further noted that Plaintiff's GAF was repeatedly assessed during his treatment at Centerstone Mental Heath Center, and that, with only one exception, Plaintiff's GAF fell within the moderate symptom range. *Id.* Because the one outlier was inconsistent with the Record, the ALJ properly discounted that assessment, and accepted the remainder that were consistent with each other, with Dr. O'Bryan's assessment, and with Mr. Proffitt's narrative assessment. *Id.* The ALJ discounted Dr. Slay's GAF assessment entirely because it went from a high of 80 (indicating little to no symptoms) to an unstated number that reflected disabling mental functional limitations, within the three visits that Plaintiff had with Dr. Slay. TR 20, 244-247, 448. The ALJ noted that Dr. Slay's final assessment that Plaintiff had disabling mental functional limitations was inconsistent with his own limited treatment records, with the extensive treatment records from Centerstone Mental Health Center, and with the Record as a whole, and therefore was not accorded any weight. *Id.* As the Regulations provide, the ALJ accepted the findings that were consistent with each other and with the Record as a whole, and discounted the findings that were inconsistent with, and unsupported by, the Record. *See, e.g.,* 20 C.F.R. § 416.927(d); 20 C.F.R. § 404.1527(d). Plaintiff's argument fails.

Plaintiff finally maintains that the ALJ erred in finding that he could perform the mental demands of work as a cashier and clerk. Docket Entry No. 18. Specifically, Plaintiff argues that the opinions of his examining mental health professionals establish that his mental restrictions preclude work as either a clerk or cashier. *Id.* Plaintiff maintains that the VE's testimony further supports this preclusion. *Id.*

12

Defendant responds that, as discussed above, the ALJ correctly rejected the limitations suggested by Dr. Slay in his March 2005 assessment, instead relying upon the limitations found by Mr. Proffitt and Dr. O'Brien. Docket Entry No. 19. Defendant contends that the hypothetical questions posed to the VE contained those limitations that the ALJ found supported by the Record, and thus, were proper. *Id.* Defendant argues that because the hypothetical questions were proper, the ALJ was correct in relying upon the VE's answers to them. *Id.*

During Plaintiff's second hearing, the ALJ posed seven different hypothetical questions to the VE, each incorporating various limitations, and each garnering a response from the VE. TR 547-555, 558. An ALJ can rely upon a VE's answer to a hypothetical in determining whether there are other jobs that exist in the economy that a plaintiff could perform if the hypothetical posed to the VE incorporated that plaintiff's exertional and nonexertional limitations. *See, e.g, Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary*, 823 F.2d 922, 927-928 (6th Cir. 1987); and *Varley v. Secretary*, 820 F.2d 777, 779 (*quoting O'Banner v. Secretary*, 587 F.2d 321, 323 (6th Cir. 1978)). In the case at bar, the hypotheticals posed to the VE appropriately incorporated Plaintiff's limitations, both exertional and nonexertional. *See* TR 547-555.

While Plaintiff is correct that Dr. Slay's opinion would preclude Plaintiff's ability to work as a cashier or clerk, and that the VE concurred that the limitations expressed in Dr. Slay's assessment would preclude such work, as has been discussed above, the ALJ discounted Dr. Slay's opinion because it was inconsistent with his own limited treatment notes and with the Record as a whole. Because the ALJ discounted Dr. Slay's opinion, he was not required to accept the VE's response to that hypothetical.

13

After considering the medical and testimonial evidence of Record, the ALJ appropriately determined which medical and testimonial evidence she deemed credible, and properly accepted the VE's responses to the hypotheticals posed that reflected those limitations. Accordingly, Plaintiff's argument fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have ten (10) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within ten (10) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

14